UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued June 15, 2005
Decided June 28, 2005

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

No. 04-3285

| | |
|---|---|
| SOL COLEMAN, JR., | Appeal from the United States District |
|      *Petitioner-Appellant,* | Court for the Eastern District |
| | of Wisconsin. |
|    *v.* | |
| | No. 01-C-1028 |
| THOMAS E. KARLEN, | |
|      *Respondent-Appellee.* | Thomas J. Curran, |
| | *Judge.* |

**O R D E R**

Sol Coleman was convicted by a Wisconsin jury of first-degree sexual assault and sentenced to 13 years' imprisonment.  After exhausting his state court remedies, Coleman filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging ineffective assistance of trial counsel and post-conviction counsel. The district court denied the petition but granted a certificate of appealability on the issue of whether his trial counsel was ineffective for failing to cross-examine a police officer about the existence of a "bloody rag."  We affirm.

BACKGROUND

Coleman was charged with first-degree sexual assault and proceeded to trial.  At trial, Lou Crosley, the victim, testified that on the morning of the assault, she was walking to the hospital to get treatment for her addiction to cocaine and for chest pains.  As she was walking, Crosley stated that two strangers, Coleman and his brother, waved her over to their truck and told her they would give her a ride to the

hospital.  Crosley got into the truck and sat between Coleman and his brother. Crosley testified that Coleman then asked her, "[d]id I want to get busy," and Crosley understood that to mean that he was offering her money in exchange for sex.  Crosley stated that she refused Coleman's request.

Crosley testified that she continued to ask Coleman to take her to the hospital, and he replied that he was going by a friend's house to get some drugs.  After driving through multiple alleys and never going to a friend's house, Coleman drove to a park.  Crosley testified that Coleman parked the truck, took the keys out of the ignition, threw his glasses on the dashboard, and told her, "you are in trouble." Coleman then gave Crosley two choices, "to pull [her] pants down or get beat [sic] really bad."  Crosley stated that Coleman had his fist cocked back ready to strike her.

Crosley testified that she told him "not to do it," that she was pregnant (which was untrue), and she was menstruating.  Crosley said that Coleman did not care and told her "to get [her] pants down now."  She then pulled down her pants, and Coleman turned her around so she was facing him and had her back to the passenger.  Coleman then began having sexual intercourse with her.  Crosley testified that at one point, she tried to sit up, and the passenger grabbed her arms and pulled her back down.  After Coleman was finished, Crosley stated that "he sat up and grabbed a rag and wiped himself off."

After driving away from the park, Coleman went around the left-side of a school bus and "almost sideswiped a police car."  The police stopped Coleman, and as Coleman reached for his license and opened the door, Crosley testified that she "pushed him out, and jumped out of the truck, and told the police that he had just raped [her]."  The police put her into the police car and eventually took her to the hospital.

Coleman took the stand in his defense.  He testified that Crosley waived him down and he stopped.  Once Crosley got into the truck, Coleman testified that he promised her drugs if she would have sex with him.  Coleman then stated that he drove to the park, and his brother got out while he and Crosley had sex.  After they were finished, Coleman stated that he pulled a rag up from the side of the seat, and he used the rag to pull the condom off.  Then Coleman, his brother, and Crosley all drove off.

The district court denied Coleman's § 2254 petition, stating that the Wisconsin Court of Appeals' conclusion was not contrary to, or an unreasonable application of, federal law or based on an unreasonable application of the facts.  The Wisconsin court concluded that Coleman had not established prejudice from counsel's failure to cross-examine the investigating officer about the rag Coleman used to wipe himself off because both Coleman and Crosley testified that the rag existed and it

was unclear how the existence of the rag would have changed the outcome of the trial.

ANALYSIS

In the denial of a habeas corpus petition, we review the district court's legal conclusions de novo and its findings of fact for clear error. *See Bintz v. Bertrand*, 403 F.3d 859, 865 (7th Cir. 2005). When a constitutional claim has been decided in the state courts on the merits, a habeas corpus petition may be granted only if the state court's decision was contrary to, or involved an unreasonable application of, established federal law, or was based on an unreasonable application of the facts. 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Ineffective assistance of counsel claims are analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984), which requires the defendant to show that counsel's performance was deficient and prejudiced the defendant. *Id.* at 687-88.

Coleman argues that his trial counsel's representation was ineffective because he failed to cross-examine police officers about the rag, which would have undermined Crosley's credibility. Coleman also asserts that counsel failed to attack Crosley's testimony that there was blood on her shirt and leg and that these failures ultimately prejudiced him by failing to support his defense that the sex was consensual. Coleman argues that cross-examination about the rag would have established that Crosley "was lying about the substantial amount of blood and, consequently, the rape itself."

But as the state correctly points out, our review is limited to whether the Wisconsin courts' decisions were contrary to, or involved an unreasonable application of, established federal law, or was based on an unreasonable application of the facts. The state argues that the decision of the Wisconsin Court of Appeals—that counsel was not constitutionally ineffective in failing to cross-examine police witnesses regarding the rag—was a correct application of *Strickland*. Regarding Coleman's claim, the Wisconsin Court of Appeals stated,

> Coleman fails to mention, however, that he admitted during his direct examination that '[he] pulled the rag up from the side of the seat, and [he] used the rag to pull, pull the condom off.' We independently conclude that whether this rag was found was inconsequential in the context of the undisputed testimony by both the alleged victim and Coleman that he used this rag after they had sexual intercourse. Failing to pursue this potential line of cross-examination does not constitute deficient performance or prejudice in the context of the entire testimony. Consequently a *Machner* [evidentiary] hearing could not transform this inconsequential matter into a viable ineffective assistance claim.

Coleman replies generally that the Wisconsin courts unreasonably applied *Strickland* because the cross-examination of an officer regarding his observations of the "blood soaked rag would have assisted Mr. Coleman in demonstrating that his version of the facts—that the relations with Ms. Crossley [sic] were consensual and that no force or violence was used—was more credible than Ms. Crossley's [sic] claim of rape." Coleman unreasonably characterizes Crosley as having said that she was covered in blood; but he is wrong. In fact Crosley rebuffed Coleman's characterization on cross-examination. Coleman continues to assert that Crosley maintained that she was covered in blood and appears to believe that the lack of blood on the rag would somehow prove that force was not used. But Coleman fails to present any evidence demonstrating that the rag was indeed bloodless. In any event, Coleman fails to demonstrate how the court unreasonably applied *Strickland* other than his assertion that they came to the wrong conclusion.

## CONCLUSION

The state courts' decision was not contrary to, or an unreasonable application of, *Strickland*, and we therefore AFFIRM the district court's judgment.